FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 1 9 2024

TAMMY H. DOWNS, CLERK
By: _____
                         DEP CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |
|---|---|
| JESSICA LANGSTON,<br><br>Plaintiff,<br><br>vs.<br><br>COGGINS RENTAL, LLC and DENNIS COGGINS,<br><br>Defendants. | Case No. 3:24-cv-00006-BRW<br><br>This case assigned to District Judge Wilson<br>and to Magistrate Judge Ramsey |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

1. This is a housing harassment case. Dennis Coggins, the mayor of Hoxie, owns residential rental properties, many of them through Coggins Rental, LLC. Coggins rented a home to Jessica Langston and then sexually harassed her. Langston now sues to recover for her injuries.

### Jurisdiction & Venue

2. This court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331 because of Langston's federal Fair Housing Act claim.

3. This court has subject-matter jurisdiction over Langston's remaining claims under 28 U.S.C. § 1367 because they arise from the same facts as her federal claim.

4. Venue is proper in this judicial district because the relevant events occurred in Lawrence County and the individual parties reside in Lawrence County.

### Parties

5. Plaintiff Jessica Langston is a person living in Lawrence County, Arkansas.

6. Defendant Coggins Rental, LLC is an Arkansas limited liability company.

1

7. Defendant Dennis Coggins is a person living in Lawrence County, Arkansas.

## Allegations

8. Jessica Langston worked at a donut shop that Dennis Coggins, then the mayor of Hoxie, frequented.

9. At the time, Ms. Langston was trying to leave an abusive relationship, but she needed to find a place to live to do so.

10. One morning at the donut shop, Ms. Langston confided in Mr. Coggins about her situation.

11. Knowing he was a landlord, she hoped he could help her find a safe place to live with her young son.

12. Mr. Coggins called Ms. Langston the same night and asked her to meet him at an unfinished property under the guise of eventually renting it to her.

13. When Ms. Langston arrived at the property, however, Mr. Coggins forced her into a long hug.

14. Ms. Langston was more than uncomfortable, she was stunned.

15. Mr. Coggins made comments about how he wanted to have sex with her.

16. Ms. Langston told him that she would not have sex with him and left without securing the rental unit.

17. Ms. Langston did not reach back out to Mr. Coggins until she was approved for a HUD housing voucher.

18. Unable to find anything to rent with the voucher from other landlords, Ms. Langston contacted Mr. Coggins.

19. He invited her to an available rental unit, and again forced her into a long hug and offered to have sex with her.

20. She declined his offer for sex, but, desperate to leave her abusive relationship, she accepted the rental unit and moved in with her son.

21. The rental unit, located in Hoxie, was owned by Coggins Rental, LLC.

22. Now her landlord, Mr. Coggins continued to harasser Ms. Langston.

23. Mr. Coggins repeatedly forced Ms. Langston into long, unwanted hugs.

24. During one of those hugs shortly after she moved into the apartment, Mr. Coggins grabbed Ms. Langston's butt.

25. And in almost every in person or telephone interaction they had, Mr. Coggins asked Ms. Langston to have sex with him in exchange for her rent and utility bills.

26. For example, Mr. Coggins told Ms. Langston he would pay her bills and take care of her and her son if she agreed to "meet [his] needs."

27. Ms. Langston understood that by "meet his needs," Mr. Coggins meant sex.

28. Mr. Coggins persistently requested sex over the next several months.

29. Scared that Mr. Coggins, who as the mayor of Hoxie yields significant power, would retaliate against her, Ms. Langston always let Mr. Coggins down gently, telling him that she respected herself and her values and did not feel comfortable engaging in a commercial, sexual relationship.

30. In addition to asking for sex, Mr. Coggins came over to Ms. Langston's apartment unannounced and called her unexpectedly, often as she was getting into or out of the shower.

31. These interactions scared Ms. Langston—she felt like Mr. Coggins was watching her.

32. Ms. Langston changed her locks, and occasionally had a friend stay over in case Mr. Coggins showed up.

33. Mr. Coggins also leveraged Ms. Langston's young son, saying things like: "You don't want your son to go without," and, "You want Christmas and birthday money for your son."

34. One time, Mr. Coggins showed up to Ms. Langston's house unannounced with $100 in cash.

35. In exchange for the $100, he wanted sex. Mr. Coggins commented that he could park around the back of the house so nobody would know he was there.

36. He also specifically told Ms. Langston he wanted sexual favors and not explicit photographs because "that's how you get in trouble."

37. After about six months of almost daily requests from Mr. Coggins for sex, Ms. Langston could not take it anymore.

38. Mr. Coggins told her that he would do whatever it took for her to agree to have sex with him.

39. This time Ms. Langston firmly stood her ground: She refused and told him that nobody had ever talked to or treated her like a sex worker before. She demanded he stop.

40. After that conversation, Mr. Coggins turned on Ms. Langston.

41. When she had to contact Mr. Coggins about any issues with her apartment, for instance, he refused to speak with or help her.

42. At one point, Mr. Coggins had her water shut off.

43. In response, Ms. Langston told him if he did not turn it back on, she would release audio recordings of him asking her for sex in exchange for money.

44. Mr. Coggins responded, "Do whatever you want with that shit."

4

45. But, shortly, her water was on.

46. Finally, Mr. Coggins began to speak ill of Ms. Langston to her neighbors and around town.

47. A neighbor informed Ms. Langston that Mr. Coggins wanted to get her out of the apartment.

48. Mr. Coggins's sexual harassment and retaliation after she stood her ground has caused Ms. Langston mental and emotional distress giving rise to related bodily injury all of which continues to this day.

## Claims for Relief

### Count 1 – Fair Housing Act

### Against All Defendants

49. Langston incorporates all other allegations here.

50. Defendants injured Langston by committing discriminatory housing practices in violation of the federal Fair Housing Act, including:

    a. Quid pro quo sexual harassment in violation of 42 U.S.C. § 3604(b), § 3604(c), and 24 C.F.R. § 100.600(a)(1);

    b. Hostile environment harassment based on sex in violation of 42 U.S.C. § 3604(b), § 3604(c), and 24 C.F.R. § 100.600(a)(2);

    c. Retaliation based on Langston's refusal to give in to sexual harassment in violation of 42 U.S.C. § 3604(b), § 3617, 24 C.F.R. § 100.65(b); and §100.400(c)(5); and

    d. Making discriminatory statements in violation of 42 U.S.C. § 3604(c).

51. Langston is therefore entitled to compensatory damages, punitive damages, declaratory relief, attorneys' fees and costs.

52. Each Defendant is directly liable, vicariously liable, or liable based on state partnership law for these discriminatory housing practices.

## Count 2 – Negligence

### Against Coggins Rental, LLC

53. Langston incorporates all other allegations here.

54. Coggins Rental owed Langston a duty to train, supervise, and discipline the Coggins so as to prevent Coggins from sexually harassing Langston.

55. Coggins Rental breached those duties, causing Coggins' harassment of Langston.

56. Those breaches therefore injured Langston.

57. Langston is therefore entitled to compensatory and punitive damages.

## Count 3 – Assault

### Against All Defendants

58. Langston incorporates all other allegations here.

59. Coggins put Langston in imminent fear of an offensive, unreasonable, unconsented, and unpermitted touching.

60. Each Defendant is directly liable, vicariously liable, or liable based on state partnership law for that conduct.

61. That conduct injured Langston.

62. Langston is therefore entitled to compensatory and punitive damages.

## Count 4 – Battery

### Against All Defendants

63. Langston incorporates all other allegations here.

64. Coggins battered Langston by making offensive and harmful contact with her, he intended to do so, and she did not consent nor was the contact permitted.

65. Each Defendant is directly liable, vicariously liable, or liable based on state partnership law for that conduct.

66. That conduct injured Langston.

67. Langston is therefore entitled to compensatory and punitive damages.

### Count 5 – Trespass

### Against All Defendants

68. Langston incorporates all other allegations here.

69. Coggins entered Langston's home and grounds without lawful authority, good cause, or consent.

70. Each Defendant is directly liable, vicariously liable, or liable based on state partnership law for that conduct.

71. That conduct injured Langston.

72. Langston is therefore entitled to compensatory and punitive damages.

### Prayer for Relief

73. Ms. Langston prays for a judgment with the following relief:

   a. Compensatory damages,

   b. Punitive damages,

   c. Attorneys' fees and costs,

   d. Pre- and post- judgment interest,

   e. Declaratory relief, and

   f. All other relief that the court finds just.

Dated: January 19, 2024

Respectfully submitted,

David Slade (ABN 2013143)
slade@wh.law
wh LAW
1 Riverfront Place, Suite 745
North Little rock, AR 72114
Tel: (501) 891-6000
Fax: (501) 222-3027

Thomas R. Kayes*
tom@civilrightsgroup.com
THE CIVIL RIGHTS GROUP, LLC
2045 W Grand Ave, Ste B, PMB 62448
Chicago, IL 60612
t. 708.722.2241

Attorneys for Plaintiff

*Application for admission pending

8

## Demand for Jury Trial

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues.

Dated: January 19, 2024

Respectfully submitted,

David Slade (ABN 2013143)
slade@wh.law
wh LAW
1 Riverfront Place, Suite 745
North Little rock, AR 72114
Tel: (501) 891-6000
Fax: (501) 222-3027

Thomas R. Kayes*
tom@civilrightsgroup.com
THE CIVIL RIGHTS GROUP, LLC
2045 W Grand Ave, Ste B, PMB 62448
Chicago, IL 60612
t. 708.722.2241

Attorneys for Plaintiff

*Application for admission pending